IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

JOANN MARTINEZ, as Personal Representative of the Estate of Ben Martinez, JOANN MARTINEZ (Wife of Ben Martinez), JOANN MARTINEZ (Daughter-in-law of Ben Martinez), LEO R. MARTINEZ, DARLA MARTINEZ, BEN MARTINEZ, JR., RICHARD MARTINEZ, NANCY MARTINEZ, JAMES HAMM and PAULINE HAMM,

        Plaintiffs,

v.                              No. CIV 03-781 BB/RLP

ROMAN CATHOLIC CHURCH ARCHDIOCESE OF SANTA FE and FATHER SCOTT MANSFIELD,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING REMAND

**THIS MATTER** is before the Court on Plaintiffs' *Motion to Remand* [#4], and the Court having considered the briefs of counsel and being otherwise duly apprised, finds the motion is well taken and will be Granted.

### *Discussion*

**I.     *Factual Background***

On June 5, 2003, Plaintiffs filed a complaint in the First Judicial District Court, County of Rio Arriba, asserting claims for intentional infliction of emotional distress, defamation, negligent supervision, and *prima facie* tort alleging they were injured by the conduct of Defendant, Father Scott Mansfield, by his actions while performing a Catholic funeral mass and related religious services for Plaintiffs' decedent, Ben Martinez. Plaintiffs allege that because he had emphysema and was on oxygen during the last year of his life, the period when Father Mansfield arrived in Chama, Ben Martinez was housebound and unable to attend church. (Compl. ¶¶ 7-10). Specifically, Plaintiffs allege:

> Defendant Father Mansfield told the people at the funeral that Ben Martinez had gone to Hell and that he did not want to hear anyone say that he had gone to Heaven. Defendant Father Mansfield stated that Ben Martinez was a Catholic in name only and if you are not a true Catholic you are going to Hell. Defendant Father Mansfield stated that, even if Ben Martinez repented in his last breath, this did not mean he was saved.
>
> Defendant Father Scott Mansfield used graphic terms to describe the fact that Ben Martinez had been living in sin and that if a person is lukewarm in their faith, as he stated Ben Martinez had been, that the Lord will vomit you out.

Compl. ¶¶ 19-20. These allegations are clearly couched in terms related to church teachings and religious cannons. However, Plaintiffs also contend:

> When Defendant Father Scott Mansfield walked to the grave site with the Deacon Trainee, Andy Rivas, he used profanities stating that he did not

> give a F_ _ _ what the people of Chama thought, that he had put the Martinez family in their place. Defendant Father Scott Mansfield stated that at least he had the "balls to stand up to the people."

Compl. ¶ 22. Plaintiffs thus maintain that rather than advancing church dogma, Father Mansfield's words were defamatory and "were intended to cause or made in reckless disregard of causing Plaintiffs' emotional distress."  Compl. ¶¶ 26-27.

Defendants removed the case alleging that:

> Each of Plaintiffs' claims, and the relief sought by Plaintiffs in their Complaint, require the adjudication of substantial disputed questions of federal law — specifically the rights of the Roman Catholic Church and its priests, as guaranteed by the First Amendment to the United States Constitution, to exercise freedom of speech and religious practice when performing a funeral mass and related religious services.  These substantial federal questions permeate and dominate the claims raised in the Complaint.  Accordingly, this Court has original jurisdiction and removal is appropriate under 28 U.S.C. § 1441.

Defs.' Notice of Removal at 2.

II.     *Legal Analysis*

The removal statute, 28 U.S.C. § 1441, should be narrowly construed with any doubt to be resolved in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-9 (1941); *Flores v. Long*, 926 F. Supp. 166 (D.N.M. 1995), *app. dism.*, 110 F.3d 730 (10th Cir. 1997).  The court looks to the face of the complaint to determine whether a federal claim is alleged.  *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998); *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983); *Martinez v. United States Olympic Comm.*, 802 F.2d 1275, 1280 (10th Cir. 1986). "The

rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Plaintiffs make no reference to federal law and rely exclusively on New Mexico law for their cause of action.  Defendants' answer asserting their First Amendment rights to freedom of speech and religion is insufficient to confer federal jurisdiction. *Bracken v. Matgouranis*, 296 F.3d 160 (3d Cir. 2002); *Gateway 2000, Inc. v. Cyrix Corp.*, 942 F. Supp. 985 (D.N.J. 1996).  On its face, then, Plaintiffs' complaint relies only on state law and Defendants' answer cannot supply a federal jurisdictional basis.

Defendants, however, maintain that in spite of their form, "Plaintiffs' claims are so profusely infected with Constitutional issues that they cannot be resolved without adjudicating First Amendment rights of profound magnitude – freedom of speech and the exercise of religion ...."  (Defs.' Resp. at 1).  The fact the issues cannot be resolved without resort to the First Amendment is merely another way of focusing on Defendants' answer.  Defendants' argument that the First Amendment must be consulted to accommodate Plaintiffs' claims may, or may not, prevail, but that cannot be the only basis for federal jurisdiction. *Briggs & Stratton Corp. v. National Catholic Reporter Publ'g Co.*, 978 F. Supp. 1195 (E. Wisc. 1997); *Church of Scientology v. Siegelman*, 475 F. Supp. 950 (S.D.N.Y. 1979).  In any defamation or obscenity claim the First Amendment may be a proper defense but that is insufficient to confer federal jurisdiction.  *Sprague v. Bulletin Co.*, 527 F. Supp. 1016 (E.D. Pa. 1981); *State of Okla.*

*ex rel. Field v. Hess*, 362 F. Supp. 1114 (W.D. Okla. 1973); *State of Tenn. ex rel. Davis v. Market St. News*, 357 F. Supp. 74 (E.D. Tenn. 1973).  And as Plaintiffs correctly note, traditional tort claims filed against clergy do not necessarily implicate the religious freedom guaranteed by the First Amendment.  *See Bollard v. California Province of the Society of Jesus*, 196 F.3d 940 (9th Cir. 1999).

Another federal district court recently remanded a case on analogous facts in *JC2 v. Grammond*, 232 F. Supp. 2d 1166 (D. Or. 2002).  In that case, former altar boys alleged they had been sexually abused by a priest.  They sued the priest, Father Grammond, and alleged that the Archdiocese of Portland was liable under *respondeat superior* because Father Grammond used "the power, authority and trust of his position as priest" to coerce the boys into sex acts.  The Archdiocese removed the action asserting the complaint "creates crucial First Amendment issues arising from their allegations of a religious-based 'breach of trust.'"  232 F. Supp. 2d at 1167.  The District Court characterized defendants' jurisdictional argument as follows:

> Defendants contend that the resolution of this issue requires the court to review, interpret and consider the religious rules and canons of the Roman Catholic Church, which is barred by the First Amendment.  Accordingly, Defendants argue that Plaintiffs' complaint raises federal constitutional issues that must be addressed by a federal court.

232 F. Supp. 2d at 1168.  The court recognized "that the extent of Grammond's authorized duties as a priest is an issue that will be contested." 232 F. Supp. 2d at 1170. Concluding the examination of whether the priest's religious authority facilitated the

commission of torts would not infringe on Defendant's freedom of religion, the district court remanded the case to state court.

In the instant case, the priest may have been following the required cannons of the church in condemning Ben Martinez to Hell. He may also have been following his own agenda and intentionally inflicting emotional distress upon the Martinez family who he allegedly intended to "put in their place." However, state courts have repeatedly resolved similar issues by consulting both state law and the First Amendment jurisprudence. *Goodman v. Temple Shir Ami*, 712 So. 2d 775 (Fla. App. 1998); *First United Church v. Udofia*, 479 S.E.2d 146 (Ga. App. 1996); *Downs v. Roman Catholic Archbishop of Baltimore*, 683 A.2d 808 (Md. App. 1996); *O'Connor v. Diocese of Honolulu*, 885 P.2d 361 (Haw. 1994). The fact that Defendants will raise the First Amendment is not sufficient when Plaintiffs raise no such claim.

## O R D E R

For the above stated reasons, Plaintiffs' *Motion to Remand* is GRANTED, and the case is REMANDED to the First Judicial District Court of Rio Arriba County, New Mexico.

SO ORDERED this 11th day of August, 2003.

                                                 **BRUCE D. BLACK**
                                                 **United States District Judge**

**For Plaintiffs:**

    Kathleen Kentish Lucero, Espanola, NM

**For Defendants:**

    Ruth Olcutt Pregenzer, Robin A. Goble, MILLER STRATVERT, Albuquerque, NM